# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | BKY Case No. 11-43113-NCD |
| Curtis C. Nelson, | |
| Debtor. | |
| Fulcrum Consulting, LLC, | Adv. No. 11-4225 |
| Plaintiff, | |
| vs. | |
| Curtis C. Nelson, | |
| Defendant. | |

## NOTICE OF HEARING AND MOTION FOR ORDER DISMISSING COMPLAINT

1. Curtis C. Nelson ("Defendant") moves the Court for the relief requested below and gives notice of hearing.

2. The court will hold a hearing on the Defendant's request for relief at 10:00a.m. on October 12, 2011 at Courtroom 8W, U.S. Bankruptcy Court, Federal Courthouse, 300 South Fourth Street, Minneapolis, Minnesota before Judge Robert J. Kressel.

3. Any response to the motion must be filed and delivered not later than October 7, 2011, which is five days before the date set for the hearing. UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED BEFORE THE DEADLINES NOTED ABOVE, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and

121294654v1  0906146

1334, Fed.R.Bank.P. 5005, and Local Rule 1070-1. This is a core proceeding. The bankruptcy case was filed on May 2, 2011. The case is pending in this court.

5.  This motion arises under Rule 7012 of the Federal Rules of Bankruptcy Procedure which incorporates Rule 12 of the Federal Rules of Civil Procedure. This motion is filed under Fed.R.Bankr.P. 9013 and Local Rules 7007-1 and 9013-1 through 9013-3. The Debtor moves the Court for an order dismissing the complaint filed by Fulcrum Consulting, LLC ("Plaintiff") with prejudice.

6.  While it is obvious that, should it ever be required, Defendant will dispute Plaintiff's "facts." No facts are necessary here, however, as for the purpose of this motion the facts in the complaint are accepted as true. A true and correct copy of the Plaintiffs' Complaint is attached as Exhibit A.

7.  No verification is necessary; no witnesses are necessary.

8.  The Plaintiff fails to state a claim upon which relief may be granted.

WHEREFORE, the Defendant requests that the court enter an order dismissing this case with prejudice, and for other such relief the court finds just and equitable.

Dated: September 26, 2011                HINSHAW & CULBERTSON LLP

                                         By: /e/ Thomas G. Wallrich
                                         Thomas G. Wallrich (#213354)
                                         Jamie R. Pierce (#305054)
                                         Peter L. Crema, Jr. (#218868)
                                         333 South Seventh Street, Suite 2000
                                         Minneapolis, MN 55402
                                         Telephone: 612-333-3434

                                         ATTORNEYS FOR DEFENDANT

121294654v1 0906146

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                                                          BKY Case No. 11-43113-NCD

Curtis C. Nelson,

      Debtor.

Fulcrum Consulting, LLC,                                                          Adv. No. 11-4225

      Plaintiff,

vs.

Curtis C. Nelson,

      Defendant.

### DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS

### **INTRODUCTION**

Curtis Nelson ("Defendant") respectfully submits this Memorandum in Support of his Motion to Dismiss the complaint filed by Fulcrum Consulting, LLC ("Fulcrum" or "Plaintiff"). Plaintiff's complaint should be dismissed with prejudice, as Plaintiff fails to allege facts sufficient to support the claims alleged in the complaint. The complaint involves the financial obligation of a third party owed to Plaintiff, and not any allegation of an obligation owed by Defendant. Furthermore, as alleged in the complaint, any promises of payment by Defendant were made after Plaintiff provided the agreed upon services to a third party, and therefore cannot constitute fraudulent inducement necessary to support the requested relief. Accordingly, Defendant's motion should be granted.

## FACTS

The facts, as plead in the complaint, must be deemed to be true by this Court when analyzing Defendant's motion to dismiss. The relevant facts from the complaint, and as numbered in the complaint, indicating that Defendant's motion should be granted, are as follows:

7. Between October 1, 2008 and August 3, 2009, Visible, through Defendant and Fulcrum, entered into numerous agreements whereby Fulcrum agreed to provide consultants to Visible at Visible's request for an agreed-upon compensation.

8. Fulcrum fully performed all of its contractual obligations. Defendant failed to pay as promised and owes Fulcrum $575,746.18 for the aforementioned services.

9. With respect to the amount owed to Fulcrum, Visible, through Defendant, have repeatedly represented and admitted to Fulcrum that Defendant will pay the amount owed.

10. Defendant has stated "it is our [Visible's] intention to have you [Fulcrum] receive all of the monies that are owed to you," "we [Visible] need to focus on getting you [Fulcrum] a partial payment, and a plan to get you paid what we owe you," realistically, I need to figure out a way to insure we can pay you what we owe you in cash in the near term and I am confident I can do that," and "I can't tell you how much I appreciate the kind of partners you [Fulcrum] have been for us [Visible], and I am committed to making this work for you equally as well."

11. Defendant agreed to pay Fulcrum the amount owed. The agreement stated that Defendant would pay a lump sum down payment of $250,000.00 in September 2009, with payments to continue on the remaining balance.

12. Defendant represented to Fulcrum Consulting via e-mail on September 2, 2009 that, "…we are now in receipt of a hard commitment letter to refinance the business…"

13. By the middle of September, Fulcrum still had not been paid for their services to Visible. Defendant represented to Fulcrum Consulting via e-mail on September 18, 2009 that,

2

"The timeline I thought we set was to reassess if we couldn't get you paid by next week. However, I have made some progress, and we can probably make a good faith payment . . ."

14. In an attempt to receive the promised $250,000 dollars, Fulcrum contacted Defendant. Defendant then represented to Fulcrum via e-mail on September 23, 2009 at 11:58 AM that, "I had hoped we would have you current by now, and we would have if it were not for the unfunded Commitment letter. …I believe by the Fourth we will be able to pay you $250,000, and I am working on accelerating that right now."

15. Defendant represented to Fulcrum Consulting via e-mail on September 23, 2009 at 2:26 PM that, "Eric, I think the 100k by the end of the week or prior to the day's start on Monday, and the 175k by the 4th would be possible…it's really tight even to have the loan I'm currently doing paperwork on to close because of the time that it takes the banks to go through the process of closing a loan…"

16. On September 25, 2009, Defendant represented to Fulcrum Consulting via e-mail that, "I had Karen prepare two checks one post dated for Monday and one for the 4th. I'll give you a head's up if we receive the funds today, but they will likely be transferred in Monday Morning. . . ."

17. Visible, through Defendant, tendered to Fulcrum two separate checks totaling $250,000 (one check for $100,000.00 and one check for $150,000.00). Both checks were bad due to insufficient funds.

18. On October 5, 2009, Defendant requested to Fulcrum Consulting via e-mail that, "Wow, I was really upset and surprised to get your e-mail, because I was sure that check had cleared last week. Karen (our controller) was out having surgery and her first day back was today, so I asked her to get me a reconciliation of our account because I had made provisions for that check. So tomorrow, I will find out what happened and get another check issued. …I had

3

expected to close on a loan last week, but at the last min. the lender wanted an outrageous, and previously unannounced fee…it now appears I have a conventional lender willing to do at least enough to get you paid and get us back on our feet and fund (at 5.35%) by Thursday this week (I am just taking out a personal loan to insure we get you paid at this point).  I also have another non-conventional lender that tells me they can fund by Fri. or the following Monday. …"

19.     To explain the long process of receiving their money, Defendant represented to Fulcrum Consulting that via e-mail on October 13, 2009 that, "The Bank I am using is fairly new to this region and is still using underwriters out of their corporate office in Texas.  My Banker here is with us, and he thought it was done but for the one question on Friday, and so he has no idea what the holdup is. . . My Banker seems to be pretty confident, in fact confident enough he has initiated the paperwork on another transaction, as possible follow on, if we need it. …"

20.     Defendant represented to Fulcrum Consulting via e-mail on October 14, 2009 that, "The Bank called this morning and asked for some further documentation, and of course I provided it for them immediately. …My banker is still sure it is going to happen, but I am getting a little nervous.  …I have a meeting this afternoon with a Hard Money guy who says he can turn around the funds by tomorrow if this doesn't come through…"

21.     After over 5 months of trying to receive their funds, Defendant met with Dan Emehiser of Fulcrum Consulting on January 20, 2010 in the Visible Customer office.

22.     Defendant admitted to Dan Emehiser on January 20, 2010 that he knew that Visible Customer had insufficient funds to cover the checks he issued to Fulcrum Consulting on September 29, 2009 and October 5, 2009.

23.     Upon information and belief, Defendant told Siamak Masoudi, a former Officer for Visible Customer, that Defendant was fully aware that the checks Defendant had presented to

4

Fulcrum Consulting in 2009 were bad when they were written and presented to Fulcrum Consulting.

24. Upon information and belief, Defendant told Siamak Masoudi that Defendant knew that no money existed in the bank account to cover the 2 checks presented to Fulcrum Consulting.

25. Upon information and belief, Defendant told Siamak Masoudi that Defendant presented the 2 checks to buy more time and extend the service obligation Fulcrum Consulting was providing.

26. Upon information and belief, Defendant told Karen Ratcliff, a former employee of Visible Customer, that Defendant was fully aware that the checks Defendant had presented to Fulcrum Consulting in 2009 were bad when they were written and presented to Fulcrum Consulting.

27. Defendant fraudulently misrepresented to Fulcrum Consulting regarding his ability to pay Fulcrum Consulting.

28. On May 2, 2011, Defendant filed a voluntary Chapter 11 Bankruptcy Petition.

## ARGUMENT

Even when accepting all of the allegations in the complaint as true, Plaintiff cannot prevail on its claims against Defendant, as the complaint does not state a claim as defined in Section 523(a)(2)(A). Exceptions to discharge are narrowly construed against the creditor and liberally in favor of the debtor thus effectuating the fresh start policy of the Bankruptcy Code. *In re Bren*, 284 B.R. 681, 689-90 (Bankr. D. Minn. 2002)(citing *The Merchants of Nat'l Bank of Winona v. Moen (In re Moen)*, 238 B.R. 785, 791 (8th Cir. BAP 1999)).

5

121293942  0906146

When deciding a motion to dismiss, the court must accept all of the allegations of the complaint as true. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 94, 2 L.Ed. 2d 90 (1957). Plaintiff's only count in the complaint is for non-dischargability under 11 U.S.C. §523(a)(2)(A). *See* complaint. Pursuant to 11 U.S.C. § 523(a)(2)(A):

> (a) A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
> >
> > (A) false pretenses, a false representation, or actual fraud …
>
> To prevail on a claim under § 523(a)(2)(A), a plaintiff must prove:
>
> in connection with the debt, (i) that the debtor made a false representation of fact, (ii) that the debtor knew was false at the time the debtor made it, (iii) that the debtor made the representation with the intent and purpose of deceiving the creditor, and that (iv) the creditor justifiably relied on the representation, (v) sustaining financial injury as a proximate result of the making of the representation… The wrongdoing targeted by the statute is a debtor's inducement to a creditor to make a loan, to give money, or to transfer property or services through the use of a false representation of face made *before* the credit was extended or the transfer was effected.
>
> *In re Scott*, 403 B.R. 25, 36-37 (Bankr. D. Minn. 2009) (citations omitted) (emphasis in original).

All allegations of fraud must plead with particularity.

"To qualify as a false representation or false pretense under 11 U.S.C. §523(a)(2)(A), the statement must relate to a present or past fact." *Id*. (citing *Shea v. Shea (In re Shea)*, 221 B.R. 491, 496 (Bank.D.Minn.1998)). "[A debtor's] promise…related to [a] future action [which does] not purport to depict current or past fact…therefore cannot be defined as a false representation or a false pretense." *Id*. (citations omitted)

"Rule 9(b) requires that circumstances constituting fraud be pleaded with particularity. *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. (Minn.) 2009)(citing Fed.R.Civ.P. 9(b)). "[The Eight Circuit] interpret[s] this rule 'in harmony with the principles of notice pleading,' and

6

to satisfy it, the complaint must allege 'such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Id.* (citing *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002)(citations omitted).

When applying the §523(a)(2)(A) factors, as detailed in the case law, it is clear that the motion to dismiss the complaint should be granted.

### I.     Plaintiff Makes No Allegations To Support Alter Ego Liability

On a threshold level, Plaintiff does not allege that the services were provided to the Defendant; in fact, the complaint clearly indicates that "[F]ulcrom agreed to provide consultants to Visible at Visible's request for an agreed-upon compensation." *See* complaint, ¶ 31.

As such, as best as can be gleaned from Plaintiff's complaint, Plaintiff is attempting to pierce the corporate veil of Visible Customer.

"While [the 8th Circuit] has never articulated the federal common law standard for piercing the corporate veil between an individual and a corporation, the Tenth Circuit has applied a two-prong test: "(i) was there such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct, and (ii) would adherence to the corporate fiction sanction a fraud, promote injustice, or lead to an evasion of legal obligations." *Minnesota Laborers Health and Welfare Fund v. Scanlan*, 360 F.3d 925, 928 (8th Cir. 2004)(citing *NLRB v. Greater Kan. City Roofing*, 2 F.3d 1047, 1052 (10th Cir.1993).

Under Minnesota law, the shareholders of a corporation ordinarily are not personally liable for the corporation's debts. Minn.Stat. § 302A.425 (2010).   Under limited circumstances, however, a court may "pierce the corporate veil" and hold an individual liable for the acts of a corporate entity.  *See Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509, 512

7

(Minn.1979). Factors to be considered when determining whether a corporation was formed as the shareholder's alter ego, include whether (1) there is sufficient capitalization for purposes of corporate undertaking; (2) corporate formalities have been observed; (3) dividends have been paid; (4) the debtor corporation was solvent at the time of the transaction in question; (5) the dominant shareholder siphoned funds; (6) there is a nonfunctioning of other officers and directors; (7) there is an absence of corporate records; and (8) the corporation exists as a mere façade for individual dealings. *Id.* at 283 N.W.2d at 512.

Here, there are no allegations whatsoever that could support a finding that Defendant is the alter ego of Visible Customer.

As the complaint makes clear, the services were provided to a third party, Visible, and not Defendant. Defendant is not a party to the contract; apparently, he only executed agreements or entered into them on behalf of Visible. As the services at issue were not provided to Defendant, and there are no issues plead pertaining to alter ego theories, there is no basis to assert the claim, and the complaint should be dismissed. Accordingly, Defendant's motion should be granted.

## II. All Alleged Misrepresentations Occurred After The Services Were Provided to Visible Customer

That the complaint should be dismissed is also clearly evident by the allegations in the complaint as to timing – all alleged promises relating to payment were made after Plaintiff provided services to Visible, and, therefore, there could be no justifiable reliance or inducement to act, based upon representations made by Defendant. Due to a lack of inducement, Plaintiff cannot establish a claim for fraud pursuant to 11 U.S.C. §523(a)(2)(A).

"Misrepresentations that are made subsequent to the creation of the debt 'have no effect upon the dischargeability of a debt, since the false representation could not have been the

8

creditor's reason for the extension of credit.' " *See In Re Capelli, 261 BR 81, 88 (Bankr. D. Conn. 2001)(citation omitted)*.

As the case law makes clear, the representation must be made as an inducement to provide services, before services were rendered. As plead in the complaint, between October 1, 2008 and August 3, 2009, Visible, through Defendant and Fulcrum, entered into numerous agreements whereby Fulcrum agreed to provide consultants to Visible at Visible's request… *See* complaint ¶7. All communications regarding payment for services, as plead in the complaint, were made after services were concluded and therefore, there can be no reliance or inducement, and therefore no fraud pursuant to 11 U.S.C. §523(a)(2)(A).

The above-cited paragraph is not an isolated allegation relating to the lack of inducement or reliance. The complaint is replete with allegations of post performance payment representations; for example:

> ¶ 10 "[i]t is [Visible's] intention to have you [Fulcrum] receive all the monies that are owed to you…."

Similarly, multiple paragraphs of the complaint refer to communications, agreements, or representations about payments to be made in September 2009, after the "numerous agreements" expired on August 3, 2009. (*See* complaint ¶7). Paragraph 11 notes that a $250,000 payment would be made in September 2009. Paragraph 12 notes a communication on September 2, 2009 about a hard commitment letter. Paragraph 13 notes a September 18 e-mail from Defendant about a timeline for payment. All subsequent paragraphs of the complaint deal with post contract completion payment proposals. (*See* complaint generally).

As the complaint only contains allegations about promises for payment after Plaintiff performed its services, no claim for fraud is stated and Defendant's motion should be granted.

9

121293942 0906146

### III. There Is No Proximate Cause Resulting in Plaintiff's Injury and Therefore Plaintiff's Motion Should Be Granted

An element of Plaintiff's burden of proof is that Plaintiff sustained financial injury as a proximate result of the making of the representation. Plaintiff cannot satisfy its burden. Proximate cause is the primary or moving cause of an injury. (Black's Law 5th Ed. 1979). As the complaint makes clear, Plaintiff provided services to Fulcrum, and after its services were finished, Defendant made representations about payment. Those representations are not the proximate cause of Plaintiff's injury. Any representations were not the "primary" or "moving cause" of the injury. All representations made by Defendant were made after Plaintiff completed its services and sustained its damage. As Plaintiff has not plead this necessary element, Defendant's motion should be granted.

Even accepting the allegations in the complaint as true, Plaintiff has not satisfied the elements required pursuant to 11 U.S.C. §523(a)(2)(A), as all representations about payment were made after the completion of the services contract. Plaintiff has not plead facts supporting this or any other relief. Accordingly, Plaintiff's motion should be dismissed.

### CONCLUSION

For the foregoing reasons, Defendant respectfully requests the Court enter an order dismissing this case.

Dated: September 26, 2011        **HINSHAW & CULBERTSON LLP**

/e/ Thomas G. Wallrich
Thomas G. Wallrich (#213354)
Jamie R. Pierce (#305054)
Peter L. Crema, Jr. (#218868)
Hinshaw & Culbertson LLP
333 South Seventh Street, Suite 2000
Minneapolis, MN 55402
612-333-3434
612-334-8888 (fax)
Attorneys for Defendant Curtis C. Nelson

121293942 0906146

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Case No.: 11-43113 |
| Curtis C. Nelson, | Chapter 11 Case |
| Debtor. | |
| Fulcrum Consulting, LLC, | ADV File No. 11-4225 |
| Plaintiff, | |
| vs. | |
| Curtis C. Nelson, | |
| Defendant. | |

## PROOF OF SERVICE

Amy E. Kulbeik, an employee of Hinshaw & Culbertson LLP, and in the course of said employment on September 26, 2011 caused the following document:

1. Notice of Hearing and Motion for Order Dismissing Complaint;
2. Defendant's Memorandum in Support of Motion to Dismiss; and
3. [Proposed] Order.

to be served upon:

Justin L. Seurer
Seurer Law Firm
175 Jackson Ave N
Suite #285
Hopkins, MN 55343

by facsimile to (612) 455-2182 and by enclosing a true and correct copy of same in an envelope, properly addressed and postage prepaid, and depositing same in the United States mail.

Dated: September 26, 2011                /s/ Amy E. Kulbeik
                                          Amy E. Kulbeik

121294658v1 0906146

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                         BKY Case No. 11-43113

Curtis C. Nelson,

        Debtor.

Fulcrum Consulting, LLC,                            Adv. No. 11-4225

        Plaintiff,
vs.

Curtis C. Nelson,

        Defendant.

**ORDER**

This matter came before the court on the Defendant's motion to dismiss. Based on the motion,

IT IS ORDERED:

    1.    The Plaintiff's complaint is dismissed with prejudice.

Dated:

                                                                Robert J. Kressel
                                                                United States Bankruptcy Judge